UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VICTORY LANE QUICK OIL CHANGE,
INC. a Michigan corporation,

       Plaintiff/Counter-Defendant,

                               CASE NO.: 07-14463

vs.                              DISTRICT JUDGE JOHN FEIKENS
                              MAGISTRATE JUDGE STEVEN D. PEPE

JOHN P. HOSS, an individual, ROY W. STARBIRD,
an individual, and CHECKERED FLAG OIL CHANGE
CENTER, INC., a Michigan corporation,

       Defendant/Counter-Plaintiff.

_____/

**REPORT AND RECOMMENDATION GRANTING PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT (DKT. # 44), GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIMS (DKT. #34)
AND DENYING DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT (DKTS. #50)**

I.      **INTRODUCTION**

      The Parties, Plaintiff, Victory Lane, as franchisor, entered into a franchise agreement

with Defendants involving a quick oil change center located at 3150 E. Grand River, Howell,

Michigan.  Plaintiff alleges Defendants violated several aspects of the contract, specifically that

there was a violation of the Lanham Act, breach of contract and federal trade dress infringement.

 It is the Defendants' position that the Plaintiff breached the subject franchise agreement when

opening a competing Victory Lane franchise within Howell, Michigan.

      On August 13, 2008, Plaintiff filed a for partial summary judgment (Dkt. #44), as well as

a motion for summary judgment on Defendants' counterclaims (Dkt. #34).   Defendants also

filed a motion for partial summary judgment, on November 5, 2008 (Dkt. #50).  Responses and replies were filed to the above motions.  All pre-trial matters have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) (Dkt. #51).   For the reasons stated below, it is **RECOMMENDED** that Plaintiff's motion for partial summary judgment be **GRANTED** and Plaintiff's motion for summary judgment on the Defendants' counterclaims and Defendants' motion for partial summary judgment be **DENIED**.

## II.   FACTUAL BACKGROUND

In 1987, Plaintiff, Victory Lane, as franchisor, entered into a franchise agreement with Defendant John Hoss involving a quick oil change center located at 3150 E. Grand River, Howell, Michigan. The 1987 franchise agreement involving the Howell Quick Oil Change Center expired at the end of its 10 year term in 1997.

On or about May 6, 1997, Plaintiff entered into another franchise agreement, the subject franchise agreement (hereinafter the "subject franchise agreement") with Defendants Hoss, Roy Starbird and their corporation , Victory Lane of Howell, Inc. (later renamed  Checkered Flag Oil Change Center, Inc. (Dkt. #43, Exhibit C ) as franchisees pertaining to the Howell Quick Oil Change Center (Dkt. #43, Exhibit B).   The Howell Quick Oil Change Center was one of Plaintiff's highest grossing franchise centers.  The subject franchise agreement had a ten-year term and set forth several restrictive covenants that were to continue after the term of the subject franchise agreement ended, including  a provision not to operate, or be involved with, a quick oil change or similar business at the Howell franchise location or within 10 miles of a Victory Lane franchise center for a period of three years after the termination of the subject franchise agreement. *Id.* at 70, ¶ 20.2.

Pursuant to the subject franchise agreement, Plaintiff asserts it provided Defendants with its proprietary and confidential business system information, including its operations manual,

advertising manual and site selection information. *Id. at* ¶ 29.   Defendants deny receiving or currently using any information that was not generally known to those providing oil change service.

Although disputed, Plaintiff asserts that on April 17, 2007, Plaintiff, through its Director of Operations, Jay Roberts, indicated to Defendants that if the subject franchise agreement were not renewed, Plaintiff would purchase the realty and assets of the Howell Quick Oil Change Center business and  assume its operations pursuant to the applicable provisions of the subject franchise agreement.[1]  On or about May 6, 2007, the subject franchise agreement 10 year term expired.

In the month that followed, Defendants Starbird and Checkered Flag indicated to Plaintiff that they were considering renewal of the subject franchise agreement and continued to operate as a Plaintiff franchise facility after May 6 and through June 2007.

On or around June 28, 2007, Victory Lane of Howell, Inc. filed an amendment to its Articles Of Incorporation with the State of Michigan changing its name to "Checkered Flag Oil Change Center, Inc." (Dkt. #43, Exhibit E).  Since 1988, Plaintiff utilized the name "Checkered Flag" as the name of its newsletter that it issues to its franchisees, vendors and lenders on a regular basis. Without renewing the subject franchise agreement or the consent of Plaintiff, Defendants Starbird and Checkered Flag operated an oil change business at 3150 E. Grand River, Howell, Michigan, utilizing the name "Checkered Flag Oil Change Center," beginning in June 2007.

---

[1] Jay Roberts left Plaintiff's employment on or about October 16, 2008 (Oxender January 15, 2009, affidavit, Dkt. # 61 Exh. B, ¶ 5).  This date Defendants' motion to amend the scheduling order (Dkt. # 60) and reopen the deposition of Mr. Roberts was granted because of asserted clarifications and modifications by Mr. Roberts on this and other issues of potential relevance to this case.

Concurrent with the above name change, Checkered Flag substituted the Plaintiff signage displayed at the Howell location with signage containing a logo similar to Victory Lane, in which Checkered Flag's company name is displayed (Dkt. #43, Exs. A and G).

On or around October 11, 2007, Plaintiff sent to the Defendants a letter demanding they cease and desist: (a) utilization of substantially similar marks to the Plaintiff marks; (b) violating the continuing non-use, non-compete and confidentiality clauses of the subject franchise agreement; and (c) operating the Checkered Flag facility.  In the letter, Plaintiff demanded to purchase the assets and realty of the Howell Quick Oil Change Center business and to assume operations of the Howell Quick Oil Change Center business.  Because Defendants Starbird and Checkered Flag declined to comply with the above cease and desist letter, on October 19, 2007, Plaintiff initiated this lawsuit against Defendants. Plaintiff's complaint included counts of, *inter alia*, violation of the Lanham Act (Count I), breach of contract (Count II), injunction (Count III), common law unfair competition (Count IV), specific performance (Count V), federal trade dress infringement (Count VI) and declaratory judgment (Count VII).

It is the Defendants' argument in response to Plaintiff's motions for summary judgment that the subject franchise agreement granted Defendants Hoss, Starbird and Checkered Flag, the exclusive right to use the Victory Lane trade marks and trade name in connection with the sale of oil change services in Howell.

> 2.1 Grant. Subject to the terms of this Agreement, Victory Lane grants to You the exclusive right to own and operate a Victory Lane Quick Oil Change Center under the Victory Lane System and a license to use the Marks in the operation of the Center at the following location: Howell . . .

(Dkt. #45, p. 8).   Curiously, this position was not alleged by Defendants in their counterclaim filed January 24, 2008, in so far as there was never an allegation of breach of contract or mention

4

of the 2.1 Grant Clause from the franchise agreement.  (Dkt. #14).  On August 10, 2008, Plaintiff

filed its motion for summary judgment on the counterclaim and a motion for partial summary

judgment on September 21, 2008.  Defendants filed a cross-motion for partial summary

judgment on November 5, 2008.

## III.   ANALYSIS

### A.   The Legal Standard for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party

demonstrates there is no genuine issue as to any material fact.  The Supreme Court has

interpreted this to mean that summary judgment should be entered if the evidence is such that a

reasonable jury could find only for the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 249 (1986).  The moving party has "the burden of showing the absence of a genuine issue

as to any material fact."  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  *See also Lenz

v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985).  In resolving a summary judgment motion, the

Court must view the evidence in the light most favorable to the non-moving party.  *See Duchon

v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d

1319, 1324 (6th Cir. 1983).  But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477

U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary
> judgment, after adequate time for discovery and upon motion, against
> a party who fails to make a showing sufficient to establish the
> existence of an element essential to that party's case, and on which
> that party will bear the burden of proof at trial.  In such a situation,
> there can be "no genuine issue as to any material fact," since a
> complete failure of proof concerning an essential element of the non-
> moving party's case necessarily renders all other facts immaterial.
> The moving party is "entitled to a judgment as a matter of law"
> because the non-moving party has failed to make a sufficient showing
> on an essential element of her case with respect to which she has the
> burden of proof.

Moreover, when a motion for summary judgment is filed, the adverse party may not merely rely "upon the mere allegations or denials of the adverse party's pleading, but . . . by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B. Factual Analysis

#### 1. Plaintiff's Motion for Partial Summary Judgment (Dkt. #44): Lanham Act and injunctive relief

Plaintiff seeks summary judgment against Defendants for violation of the Lanham Act. The main test established by the Sixth Circuit to determine whether there has been trademark infringement under the Lanham Act is the likelihood of confusion between the two marks. *Audi AG v. D'Amato,* 469 F.3d 534, 542 (6th Cir. 2006), *citing Two Pesos v. Taco Cabana,* 505 U.S. 763, 780, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). In *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275 (6th Cir. 1997), the Sixth Circuit set forth the elements to be considered when evaluating a claim of trademark infringement:

The touchstone of liability under § 1114 is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties. When determining whether a likelihood of confusion exists, a court must examine and weigh the following eight factors:
        1. strength of the senior mark;
        2. relatedness of the goods or services;
        3. similarity of the marks;
        4. evidence of actual confusion;
        5. marketing channels used;
        6. likely degree of purchaser care;
        7. the intent of defendant in selecting the mark; and
        8. likelihood of expansion of the product lines.

*Daddy's Junky Music*, *supra*, at 280. These factors are a guide to determine whether confusion between the marks is likely. *Id.* If the parties compete directly in the offering of goods and services, confusion is likely to occur where the marks are sufficiently similar. *Id.* at 282-283.

When comparing two marks, a court must view the marks in their entirety and focus on their overall impression. *Id.* "The overall impression created by a mark from the ordinary shopper's cursory observation in the market place will or will not lead to the likelihood of confusion, not the impression created from a meticulous comparison as expressed in carefully weighted analysis in legal briefs." *Id.*, quoting 3 J. Thomas McCarthy, McCarthy On Trademarks And Unfair Competition, §23.15[a] (perm. Ed. Rev. vol. 1995).

For the reasons stated below, it is recommended that Plaintiff be granted summary judgment against Defendants Starbird and Checkered Flag for violation of the Lanham Act. As to the first factor, Plaintiff's mark is the stronger, as it was initially filed with the United States Patent and Trademark Office in 1986, and has been utilized continually since that time. (Dkt. #44, Exhibit B). Defendant Checkered Flag's logo, on the other hand, was only registered in 2007 with the State of Michigan and has been in use since June 2007. (Dkt. #33, Ex. M, pgs. 51 and 76-77). As to factor two, both Plaintiff and Defendant Checkered Flag provide quick oil change services to the public and are thus in direct competition with each other.

The logos themselves are substantially similar. (Dkt. #44, *Compare* Exhibit B and page 3 of Exhibit H *with* Exhibit G). Plaintiff's federally trademarked logo contains the words "Victory Lane" in red letters, staggered on two separate lines with the first word written in the upper left corner and the second word written in bottom right corner, with a black and white checkerboard pattered wrapped between the words "Victory" and "Lane". Centered below this scheme are the words "Quick Oil Change." The Checkered Flag Oil Change Center logo also has its name, "Checkered Flag," in red letters, and staggered on two separate lines also with first word written in the upper left corner and the second word written in bottom right corner, and also with a black and white checkerboard pattern wrapped between "Checkered" and "Flag" and also with the words "Oil Change Center" under the name/checkerboard pattern. "Checkered Flag" is also the

7

name of Plaintiff's newsletter which it distributes to its franchisees (such as Defendant), vendors and lenders. (Dkt. #44, Exhibit H).

Evidence of actual confusion due to the similarity between the marks has occurred. Other franchisees of Plaintiff have received questions from customers and vendors regarding Defendants' Checkered Flag facility and its relationship with the Plaintiff franchise who thought that "Checkered Flag" was affiliated with Plaintiff. (Dkt. #44, Exs. I and J).

As to the marketing channels used by the parties, both have locations in Livingston County and market in that area. The degree of customer care in the oil change business is not high. Customers, who began utilizing the services at the 3150 E. Grand River, Howell, Michigan Quick Oil location are not highly likely to take into consideration the slight change in signage. Presumably, customers looking for an oil change would be more likely to be influenced by location and habit than anything else. This goes to the intent of the Defendants in selecting the Checkered Flag mark and name. It is inconceivable, and thus can be determined as a matter of law, that the similarities in signage was not an intentional copying of Plaintiff's registered logos. Yet, Defendants use of the Checkered Flag name alone is not likely to cause confusion among its oil change customers if not coupled with the similar signage to Plaintiff's logo and the continued us of the former Victory Lane location. Defendants' intent was to continue to draw their return customers with a sign that was so similar as to be almost identical to the former Victory Lane signs. The last fact for consideration is the likelihood for expansion of the product lines. Expansion in the quick oil change industry are limited and there is little chance that there would be further, divergent growth of product lines.

A review of the Lanham Act infringement factors set forth by the Sixth Circuit establishes that Defendants Starbird and Checkered Flag are in violation of the Lanham Act. Accordingly, **IT IS RECOMMENDED** that Defendants be allowed to keep the name "Checkered

Flag" but be enjoined from marketing, promoting or selling quick oil change services under their current Checkered Flag logo and signage. **IT IS FURTHER RECOMMENDED** that Defendants post a sign no smaller than 15" x 30" giving directions to Victory Lane's other Howell location prominently displaying Victory Lane's logo on their sign.

Plaintiff also sought in its motion for partial summary judgment a permanent injunction against Defendants Starbird and Checkered Flag from having an business interest at the Howell Quick Oil Change Center or within ten miles of a Victory Lane Quick Oil change center for three years from the date of the permanent injunction. Because there is a genuine issue of material fact, as will be discussed below, as to the intention of the parties when forming the contract, **IT IS RECOMMENDED** that a permanent injunction preventing Defendants from engaging in an oil change business at 3150 E. Grand River, Howell, Michigan or ten miles of a Plaintiff franchise be **DENIED**.

### 2. Plaintiff's motion for summary judgment (Dkt. #34)

Defendants/Counterclaimants filed a counterclaim on January 24, 2008, alleging 1. the non-compete provision at § 20.2 of the subject franchise agreement is an illegal restraint on trade; 2. tortious interference with business relationships and 3. breach of implied covenant of good faith and fair dealing. At the hearing held on January 20, 2008, Defendants/Counterclaimants argued that a fourth count for breach of contract had adequately been alleged, specifically a breach of the exclusive grant provision § 2.1 of the subject franchise agreement, putting the opposing party on notice.

In essence a complaint is simply a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). While it is true that a complaint need not set down in detail all the particulars of a party's claim, it does need to afford the opposing party fair

notice of the claim and grounds upon which it rests. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103 L.Ed.2d 80 (1957). The counterclaim filed by Defendants on January 24, 2008, Dkt. #14, fails to provide fair notice to the Plaintiff of a breach of contract claim or the grounds for such a claim. There is a passing reference to breach of contract in ¶25, stating: Counter-Defendant has breached the Franchise Agreement and the covenant of good faith and fair dealing implicit there in . . . " This reference appears under the heading presented bold letters "COUNTERCLAIM III Breach of the Implied Covenant of Good Faith and Fair Dealing." Moreover the grounds upon which the claim rests fails to mention the exclusivity clause § 2.1 of the subject franchise agreement. This clause does not appear anywhere in the Defendants/Counterclaimants' complaint. The first time Defendants proffered an argument regarding a breach of § 2.1 appeared in their response to Plaintiff's motion for preliminary injunction filed on October 2, 2008. (Dkt. #45). For these reasons, it is not found that Defendants/Counterclaimants adequately plead a fourth count for breach of contract. Accordingly, Plaintiff's motion for summary judgment for the three counterclaims will be evaluated as a motion for summary judgment of Defendant/Counterclaimants' counterclaim as filed in its entirety but excluding any claim for breach of contract

### a. Tortious Interference with a Business Expectancy

As to the claim of tortious interference with a business expectancy, there is no evidence in the record that Plaintiff took any purposefully wrongful actions to disrupt Defendants' relationship with any customers. In order to succeed in a claim for tortious interference with a business relationship, a plaintiff must demonstrate: (1) the existence of a business relationship with a third-party, (2) which was known by the defendant, (3) that the defendant intentionally and improperly induces a disruption of the business relationship, and (4) the plaintiffs' business relationship is damaged or disrupted. *Mino v. Clio School District*, 224 Mich. App. 60, 78

(2003)., *supra*, at 78; and *Jim-Bob, Inc. v. Mehling*, 178 Mich. App. 71 (1989).

Defendants having cultivated customer relations under the goodwill of franchisor, Victory Lane, has no claim of business expectancy when it terminates, and thus repudiates the Victory Lane franchise.  The Sixth Circuit has held that a franchisee has no business expectancy of future business relationships with customers developed during the franchise relationship. *Geib v. Amoco Oil Co.*, 29 F3d 1050, 1061 (6th Cir., 1994) (remanded on other grounds).   In *Geib*, the plaintiff, Donald W. Geib ("Geib"), leased various Amoco Oil Company ("Amoco") stations and performed automotive repair services under Amoco's trademarks pursuant to various agreements with Amoco, including a "Certified Automotive Maintenance And Repair Service Franchise Agreement ('Certicare Agreement')." *Geib*, *supra*, at 1052. Amoco declined to renew his franchise when it discovered that Geib was manipulating the gas inventory reports for his station. *Id.* at 1052-1053. Geib subsequently filed a lawsuit with several claims, including tortious interference with business relations. *Id.*, at 1053. Geib alleged that Amoco tortiously interfered with his business expectancy with his customers when Amoco mailed Amoco advertisements to the customers of Geib's former Certicare franchise center. *Id.* at 1061-1062 . The Sixth Circuit held that Geib failed to demonstrate that he had an expectancy of future business with the identified customers with which Amoco may have interfered, specifying that an expectation of future dealings with former customers did not survive the termination of the franchise. *Id.* at 1061-1062, citing *Michigan Podiatric Medical Ass'n v. National Foot Care Program, Inc.*, 175 Mich. App. 723 (1989).

Similarly, Defendants had a franchise relationship under which they operated, and which they subsequently terminated. Defendants claim for tortious interference is that Plaintiff interfered with their business expectancy after the subject franchise agreement terminated by sending directed advertising to customers who utilized the Howell franchise center. (Dkt. # 14, p.

9 ¶21(c). Defendants, however, do not have an expectancy in the continued business of the Howell Victory Lane franchise center's former customers after the termination of the Victory Lane relationship. *Geib*, *supra*, at 1062.   An expectancy in the continued business of these customers, an identifiable class of third parties,  is a necessary element in Plaintiffs' claim for tortious interference with a business relationship. *Mino v. Clio School District*, 255 Mich. App. 60, 78 (2003).  Because there is no expectancy in the continued business of the Howell Victory Lane franchise center's former customers, **IT IS RECOMMENDED**  summary judgment be **GRANTED** to Plaintiff on Defendants/Counterclaimants' claim for tortious interference with a business relationship.

Defendants/Counterclaimants also allege that Plaintiff tortiously interfered with its business relationships with the Howell franchise center's customers by building a second Victory Lane franchise location approximately three miles of the Howell franchise center. (Dkt. #14, p. 9, ¶21(a)).   In order to sustain a tort action which is based upon a contractual obligation depends on whether the conduct constituted a breach of duty separate and distinct from a breach of contract.  *Haas v. Montgomery Ward & Co.*, 812 F.2d 1015, 1016 (6th Cir. 1987); *Brewster v. Martin Marietta Aluminum Sales, Inc.*, 145 Mich. App. 641, 667-69, 378 N.W. 2d 558, 568 (1985).  The question is simply whether a tort action would arise independent of the existence of a contract.  *Allendale Mut. Ins. Co. v. Triple-S Techs., Inc.*, 851 F. Supp. 277, 280 (W.D. Mich. 1993). Defendants failed to present evidence that Plaintiff took any action that breached a duty it owed to Defendants separate from it contractual obligations.  Interestingly enough, there is evidence that Plaintiff first offered the second Howell location to Defendant Starbird , which was rejected by Defendant Starbird.  The offer is some indication that Plaintiff sought to engage Defendants into another contractual relationship separate from the franchise agreement not to interfere with an established business relationship or to create a duty distinct from its contractual

one.  For these reasons, **IT IS RECOMMENDED** that summary judgment on this count be **GRANTED**.

### b.  Breach of Implied Covenant of Good Faith and Fair Dealing

Because Defendants/Counterclaimants failed to allege a cause of action for breach of contract, the claim for breach of the covenant of good faith and fair dealing is not recognized in Michigan as a separate cause of action.   A claim for the breach of the covenant of good faith and fair dealing independent of a breach of contract claim is untenable and not recognized by Michigan courts. *Belle Isle Grill Corp.*, 256 Mich. App 463, 476; 666 NW2d 271 (2003); *Ulrich v. Federal Land Bank of St. Paul*, 192 Mich.App. 194, 197, 480 N.W.2d 910 (1991).  When a cognizable claim has not been plead, summary judgment is appropriate. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F2d 434, 436 (6th Cir. 1988).  Therefore, **IT IS RECOMMENDED** that summary judgment be **GRANTED** for the Plaintiff on the Defendant/Counter Plaintiffs' claim for breach of implied covenant of good faith and fair dealing.

### c.  Declaratory Judgment

Defendants/Counterclaimants seek a declaratory judgment that the non-compete provision of the subject franchise agreement violates the Michigan Antitrust Act as an improper restraint of trade. (Dkt. #14, pp. 6-8).  The Declaratory Judgement Act provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration," 28 U.S.C. § 2201(a) (1988 ed., Supp. V).  The Declaratory Judgement Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995).  In *Amsouth Bank v. Dale*, 386 F.3d 763 (6th Cir. 2004), the Sixth Circuit, citing its prior decision in *Scottsdale Ins. Co v. Roumph*, 211 F.3d 964, 967 (6th Cir. 2000), listed the five factors to be considered in

determining whether a federal district court should exercise jurisdiction over a declaratory judgment:

> (1) whether the judgment would settle the controversy;
>
> (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for *res judicata*";
>
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
>
> (5) whether there is an alternative remedy that is better or more effective.

*Id.* at 784.

Defendants/Counterclaimants declaratory judgment does not seek a declaration of their rights, but a declaration that a contractual provision within the subject franchise agreement violates the Michigan Antitrust Act, without seeking actual antitrust relief. (Dkt. #14, pp. 6-8). It must be noted that the claim is also an affirmative defense raised by Defendants.  "[T]he Declaratory Judgment Act is not to be used to bring to the federal courts an affirmative defense which can be asserted in a pending state action." *Int'l Ass'n of Entrepreneurs v. Angoff,* 58 F.3d 1266, 1270 (8th Cir., 1995), *cert. denied,* 516 U.S. 1072, 116 S.Ct. 774, 133 L.Ed.2d 726 (1996); *Morrison v. Parker,* 90 F.Supp.2d 876, 881 (W.D. Mich., 2000) ("Viewed from the perspective of [the Sixth Circuit's five] standards, an action by a putative tortfeasor fares poorly as a declaratory judgment action."), the above cited with approval by *AmSouth Bank v. Dale*, 386 F.3d 763, 787 (6th Cir., 2004). Furthermore, because Defendants have not alleged that a claim for antitrust violations, they are in essence seeking a declaration as a competitor, not as a defender of competition.  To prevail in an antitrust claim, a Plaintiff must present evidence of an antitrust injury, that competition itself was harmed by the acts of the Defendant. *Indeck Energy Servs. v.*

14

*Consumers Energy Co.*, 250 F.3d 972, 977 (6th Cir. 2000). Defendants have offered no evidence in support of the proposition that the provision of the subject franchise agreement creates an antitrust injury. As the declaration requested is not a proper action for declaratory judgment, **IT IS RECOMMENDED** that this counterclaim be dismissed. For these reasons, summary judgment should be **GRANTED** in favor of Plaintiff and the counterclaim dismissed in its entirety.

### 3. Defendants Motion for Partial Summary Judgment (#50)

Defendants motion for partial summary judgment is based on two arguments. The first seeks summary judgment on Plaintiff's First Amended Complaint for Counts II (Breach of Contract), III (Injunction), V (Specific Performance), and VII (Declaratory Judgment) based on their interpretation of the § 2.1 grant provision of the subject franchise agreement which Defendants interpret as providing an exclusive right to operate the sole Victory Lane franchise in the Howell Area. Defendants contend that when Plaintiff built a second franchise in Howell, Plaintiff breached the subject franchise agreement. The portion of the subject franchise agreement in dispute reads as follows:

> 2.1 <u>Grant</u>. Subject to the terms of this Agreement, Victory Lane grants to You the exclusive right to own and operate a Victory Lane Quick Oil Change Center under the Victory Lane System and a license to use the Marks in the operation of the Center at the following location: Howell [handwritten]. If, however, at the time this Agreement is signed You have not secured an approved location for the Center, You shall have the right to select and locate the Center upon an approved site in the general are of [blank].

(Dkt. #45, Ex. 1, 2. <u>Grant of Franchise and Licensed Rights</u>). Plaintiff argues that the provision does not provide a geographic exclusivity, that the correct interpretation of the above provision is that the grant provides Defendants with the exclusive right to operate at 3150 E. Grand River, Howell, Michigan, but this provision in no way constrains Victory Lane from building another oil change operation within the city of Howell. It turns to the Court to interpret the intent of the

parties when forming the contract, specifically the interpretation of the handwritten word "Howell" and nothing more connoting a location.

Honoring the intent of the parties is the primary goal in contract interpretation. *UAW-GM Human Resource Ctr. v. KSL Recreation Corp.,* 228 Mich. App. 486, 491; 579 N.W.2d 411 (1998). The courts must consider the plain and ordinary meaning of the words used in the contract. *Wilkie v. Auto-Owners Ins. Co.,* 469 Mich. 41, 47; 664 N.W.2d 776 (2003). At the time the contract was executed, Defendants had operated a Victory Lane Quick Oil Change center at 3150 E. Grand River, City of Howell for ten years.  It is Plaintiff's position that "Howell" should be read to mean the 3150 E. Grand River location and not as an establishment of an "exclusive territory."

Honoring the intent of the parties is the primary goal in contract interpretation. *UAW-GM Human Resource Ctr. v. KSL Recreation Corp.,* 228 Mich. App. 486, 491; 579 N.W.2d 411 (1998). The courts must consider the plain and ordinary meaning of the words used in the contract. *Wilkie v. Auto-Owners Ins. Co.,* 469 Mich. 41, 47; 664 N.W.2d 776 (2003). If the contract is subject to two or more reasonable interpretations, the contract is deemed to be ambiguous, and a factual development is necessary to determine the intent of the parties. *Petovello v. Murray*, 139 Mich.App. 639, 362 N.W.2d 857, 858 (1984).  Both parties have proffered reasonable interpretations of this ambiguous provision of the subject franchise agreement.  As such there is a question of fact that must be resolved by the trier of fact and **IT IS RECOMMENDED** that summary judgment be **DENIED**.

Defendants' second argument is that patrial summary should be granted in its favor on Count III of their counterclaim for breach of implied covenant of good faith and fair dealing. For the reasons stated above, Defendants' motion for partial summary judgment on Count III in their favor should be denied because they failed to present a cognizable claim.

## VI.  Jurisdiction

The basis of original jurisdiction for this case came from the federal question involving violations of the Lanham Act and Federal Trade Dress Infringement.  Most of the remaining claims and counterclaims are questions of Michigan law.  A district court may decline to exercise supplemental jurisdiction over a claim when the claims over which it had original jurisdiction are dismissed.  But because there also remains an issue of damages as to the Lanham Act violation, **IT IS RECOMMENDED THAT THIS COURT EXERCISE SUPPLEMENTAL JURISDICTION** over the remaining claims and all outstanding motions.

## VII.  RECOMMENDATION

For the reasons stated above, it is **RECOMMENDED** that Plaintiff's motion for Partial Summary Judgment be (Dkt. #44) and for summary judgment on counterclaims (Dkt. #34) be **GRANTED** and that Defendants' motion for partial summary judgment (Dkt. #50) be **DENIED**. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this report and recommendation.  *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.  A party may file a reply brief within 5 days of service of a response.  The reply shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.

Dated: March 20, 2009                        s/ Steven D. Pepe
Ann Arbor, MI                                United States Magistrate Judge