UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VICTORY LANE QUICK OIL CHANGE,
INC. a Michigan corporation,

            Plaintiff/Counter-Defendant,       CIVIL ACTION NO. 07-14463

      vs.                                DISTRICT JUDGE JOHN FEIKENS

JOHN P. HOSS, an individual, ROY         MAGISTRATE JUDGE MARK RANDON
W. STARBIRD, an individual, and
CHECKERED FLAG OIL CHANGE
CENTER, INC., a Michigan corporation,

            Defendant/Counter-Plaintiff.
_____/

## REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND TO GRANT PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' COUNTERCLAIMS

## I. INTRODUCTION

There are two motions before the Court: (1) Plaintiff Victory Lane Quick Oil Change, Inc.'s (Victory Lane) motion for partial summary judgment (Dkt. # 114); and (2) Victory Lane's motion to strike (Dkt. # 111) Defendants John Hoss, Roy Starbird and Checkered Flag Oil Change Center, Inc.'s (Defendants) counterclaims.  All pre-trial matters have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) (Dkt. # 103).   For the reasons stated below, it is **RECOMMENDED** that Victory Lane's motion for partial summary judgment be **GRANTED** and that Victory Lane's motion to strike Defendants' counterclaims also be **GRANTED**.

-1-

## II.  **VICTORY LANE'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

### A.    *Factual Background*

In 1987, Victory Lane, as franchisor, entered into a franchise agreement with Defendant

John Hoss involving a quick oil change center located at 3150 E. Grand River, Howell,

Michigan.  The 1987 franchise agreement expired at the end of its 10 year term in 1997.

On or about May 6, 1997, Victory Lane entered into a second franchise agreement (the

"Franchise Agreement") with Defendants Hoss, Roy Starbird and their corporation, Victory Lane

of Howell, Inc. (later renamed Checkered Flag Oil Change Center, Inc. (Dkt. # 114, Ex. E )) as

franchisees pertaining to the same oil change business in Howell, Michigan (Dkt. # 117, Ex. 1).

This second Franchise Agreement is the subject of the present litigation.  The Franchise

Agreement had a ten-year term and set forth several restrictive covenants that were to continue

after its term ended, including a provision not to operate, or be involved with, a quick oil change

or similar business at the Howell franchise location or within 10 miles of any other Victory Lane

franchise for a period of three years after the termination of the Franchise Agreement.  *Id.* at §

20.2.  The Franchise Agreement's ten-year term expired on or about May 6, 2007.  Despite the

expiration of the Franchise Agreement, Defendants Starbird and Checkered Flag continued

operating as a Victory Lane oil change center for an additional month and a half (*i.e.* until the end

of June, 2007).  *See* Deposition of Starbird at 82, (Dkt # 114, Ex. H).

On or around June 28, 2007, Victory Lane of Howell, Inc., filed an amendment to its

Articles Of Incorporation with the State of Michigan changing its name to "Checkered Flag Oil

Change Center, Inc." (Dkt. # 114, Exhibit E).  Since 1988, Victory Lane has utilized the name

"Checkered Flag" as the name of its newsletter that it issues to its franchisees, vendors and

lenders on a regular basis.  *See* Oxender Affidavit ¶ 37-38 (Dkt. # 114, Ex. A).  Without

renewing the Franchise Agreement, or obtaining the consent of Victory Lane, Defendants

Starbird and Checkered Flag operated an oil change business at 3150 E. Grand River, Howell,

Michigan, utilizing the name "Checkered Flag Oil Change Center," beginning in June 2007.  *Id.*

at ¶ 41.

 Concurrent with the above name change, Checkered Flag substituted Victory Lane's

signage displayed at the Howell location with signage containing a logo closely resembling

Victory Lane's, in which Checkered Flag's company name is displayed (Dkt. # 114, Exs. A and

G).  On or around October 11, 2007, Victory Lane sent Defendants a letter demanding they cease

and desist: (a) utilization of substantially similar marks to the Victory Lane marks; (b)

violating the continuing non-use, non-compete and confidentiality clauses of the Franchise

Agreement; and (c) operating the Checkered Flag facility (Dkt. # 114, Ex. K).  In the letter,

Victory Lane demanded to purchase the assets and realty of the Howell oil change business and

to assume operations of the Howell business.  *Id.*  Defendants Starbird and Checkered Flag

declined to comply with the above cease and desist letter; thus, on October 19, 2007, Victory

Lane initiated this lawsuit against Defendants.  Victory Lane's Complaint included counts of,

*inter alia*, violation of the Lanham Act (Count I), breach of contract (Count II), injunction (Count

III), common law unfair competition (Count IV), specific performance (Count V), federal trade

dress infringement (Count VI) and declaratory judgment (Count VII).

### B. *Procedural History*

 On August 13, 2008, Victory Lane filed a motion for partial summary judgment (Dkt.

#44), as well as a motion for summary judgment on Defendants' counterclaims (Dkt. #34).

Victory Lane's prior motion for partial summary judgment sought judgment on Victory Lane's

Lanham Act trademark infringement claims.  On March 20, 2009, Magistrate Judge Pepe issued

a Report and Recommendation (Dkt. # 71) recommending that Victory Lane be granted partial

summary judgment on its Lanham Act claim.  Defendants filed objections (Dkt. # 74) to

Magistrate Judge Pepe's Report and Recommendation.  On August 10, 2009, the Court overruled

Defendants' objections and adopted (Dkt. # 105) Magistrate Judge Pepe's March 20, 2009

Report and Recommendation, making only minor modifications to Magistrate Judge Pepe's

recommendations.  Thus, Victory Lane has already prevailed as a matter of law on its Lanham

Act trademark infringement claims.

   Victory Lane's present motion for summary judgment (Dkt. # 114) requests a judgment

of liability on its breach of contract claims.  As set forth below, the undersigned recommends that

the Court **GRANT** summary judgment to Victory Lane on its breach of contract claims.  If the

Court adopts this recommendation, the issue of what damages to assess (for both Victory Lane's

breach of contract claims, as well as its Lanham Act claim) remains open.

### C.   *Analysis*

#### 1.  **The Legal Standard for Summary Judgment**

   Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party

demonstrates there is no genuine issue as to any material fact.  The Supreme Court has

interpreted this to mean that summary judgment should be entered if the evidence is such that a

reasonable jury could find only for the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 249 (1986).  The moving party has "the burden of showing the absence of a genuine issue

as to any material fact."  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  *See also Lenz*

*v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985).  In resolving a summary judgment motion, the

Court must view the evidence in the light most favorable to the non-moving party.  *See Duchon*

*v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d

1319, 1324 (6th Cir. 1983).  But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477

U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary
> judgment, after adequate time for discovery and upon motion,
> against a party who fails to make a showing sufficient to establish
> the existence of an element essential to that party's case, and on
> which that party will bear the burden of proof at trial.  In such a
> situation, there can be "no genuine issue as to any material fact,"
> since a complete failure of proof concerning an essential element
> of the nonmoving party's case necessarily renders all other facts
> immaterial.  The moving party is "entitled to a judgment as a
> matter of law" because the non-moving party has failed to make a
> sufficient showing on an essential element of her case with respect
> to which she has the burden of proof.

Moreover, when a motion for summary judgment is filed, the adverse party may not merely rely

"upon the mere allegations or denials of the adverse party's pleading, but . . . by affidavits or as

otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue

for trial." Fed. R. Civ. P. 56(e).

The Franchise Agreement states in § 21.6 that "[t]he terms and provisions of this

Agreement shall be interpreted in accordance with and governed by the laws of the state where

the Center is located."  The "Center" at issue is located in Howell, Michigan, thus Michigan law

applies.

In Michigan, "[t]he proper interpretation of a contract is a question of law."  *Coates v.*

*Bastian Bros., Inc*., 276 Mich. App. 498 (2007) (citing *Wilkie v. Auto-Owners Ins. Co.*, 469

-5-

Mich. 41 (2003)).  "That contracts are enforced according to their terms is a corollary of the parties' liberty to contract."  *Id.* (citing *Rory v. Cont'l Ins. Co.*, 473 Mich. 457 (2005)).  "The goal of contract construction is to determine and enforce the parties' intent on the basis of the plain language of the contract itself."  *St. Clair Med., P.C. v. Borgiel*, 270 Mich. App. 260 (2006).  Michigan courts "examine[ ] contractual language and give[ ] the words their **plain and ordinary** meanings."  *Coates*, 276 Mich. App. 498 (emphasis added).  "If the language of the contract is unambiguous, [the court] construe[s] and enforce[s] the contract as written."  *Quality Prod. & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362 (2003).  If the contract language "is ambiguous, testimony may be taken to explain the ambiguity."  *City of Grosse Pointe Park v. Mich. Mun. Liab. & Prop. Pool*, 473 Mich. 188 (2005).  "Only when contract language is ambiguous does its meaning become a question of fact."  *Coates*, 276 Mich. App. 498.

Victory Lane requests summary judgment based upon three separate breaches of the Franchise Agreement: (1) that Defendants violated the Franchise Agreement's provisions concerning Victory Lane's trademarks and/or that Defendants violated their obligations to cease identifying themselves as a Victory Lane oil change center after the expiration of the Franchise Agreement; (2) that Defendants Starbird and Checkered Flag violated the Franchise Agreement's non-compete clause; and (3) that Defendants Hoss and Starbird are personally liable for any breach of the Franchise Agreement, by virtue of the Franchise Agreement's personal guaranty. Each contractual provision will be discussed below.

### 2.  Trademark Provisions of Franchise Agreement

Victory Lane first asks the Court to rule that Defendants breached the provisions in the

Franchise Agreement relating to the use of Victory Lane's trademarks.  The relevant provisions

of the Franchise Agreement read as follows:

> **15. Marks**.
>
> **15.1 Ownership**. You acknowledge that We are the owner of all
> Marks licensed to You by this Agreement and that all usage of the
> Marks and any goodwill established shall inure to Our exclusive
> benefit. You shall use the Marks in full compliance with rules
> prescribed from time to time by Us. You will not use any mark as
> part of any corporate name or with any prefix, suffix or other
> modifying words, terms, designs or symbols nor may You use any
> mark in connection with the sale of any unauthorized product or
> service or in any other manner not explicitly authorized in writing
> by Us.
> ***
> **17.2  Obligations of Franchisee Upon Termination or
> Expiration**. Upon termination or expiration of this Agreement,
> You agree to:
>
> ***
>
> (e) immediately cease identifying Yourself as a Victory Lane
> Quick Oil Change Center or as being associated with the Victory
> Lane Quick Oil Change System;
>
> (f) if You retain possession of the Center premises, at Your
> expense, make such reasonable modifications to the exterior, and
> interior decor of the Center as We require to eliminate its
> identification as a Victory Lane Quick Oil Change Center;
>
> ***

There is also no dispute that Defendants continued to operate their business as a Victory Lane oil

change center after the Franchise Agreement's ten-year term expired on or about May 6, 2007.

Indeed, Defendants Starbird and Checkered Flag continued to operate the Howell business under

the "Victory Lane" name until approximately June 26, 2007.  *See* Deposition of Starbird at 82 (Dkt # 114, Ex. H).  Thus, it appears clear that Defendants violated § 17.2(e) of the Franchise Agreement, since Defendants did not "immediately cease identifying Yourself as a Victory Lane" upon the expiration of the Franchise Agreement, but rather kept operating under the Victory Lane name for approximately a month and a half.  Furthermore, Defendants did not make any modifications to eliminate identification of the business as a "Victory Lane" until June 26, 2007.  Thus, Defendants also violated § 17.2(f) of the Franchise Agreement.

As to the period of time after June 26, 2007 – when Defendants changed the name of the Howell business to "Checkered Flag" – this Court has already ruled as a matter of law that Defendants' violated the Lanham Act and illegally used Victory Lane's registered trademarks.  *See* Report & Recommendation at 7-9 (Dkt. # 71); Order Modifying And Adopting Report And Recommendation (Dkt. # 105).  Specifically, the Court held that, "Defendants' intent was to continue to draw their return customers with a sign that was so similar as to be almost identical to the former Victory Lane signs." Report and Recommendation at 8.  Accordingly, there is no genuine issue of fact that Defendants breached § 15.1 of the Franchise Agreement when they illegally used Victory Lane's identification schemes and violated the license to use Victory Lane's federally registered marks.  In sum, Defendants breached the provisions of the Franchise Agreement relating to the use of Victory Lane's marks and identification schemes, thus Victory Lane is entitled to summary judgment on this claim.

### 2.  Non-Compete Provisions of Franchise Agreement

Victory Lane next asks for summary judgment against Defendants Starbird and

Checkered Flag (not Hoss) for breaching the non-compete provision contained in the Franchise

Agreement.  The relevant provision of the Franchise Agreement reads as follows:

> **20.2 After the Term**. You and Your Owners agree that, for a
> period of three (3) years after termination or expiration of this
> Agreement, the date of any formal court order in Our favor
> enforcing this covenant, or the date on which You cease to operate
> the Center, whichever is later, neither You nor any of Your Owners
> will, directly or indirectly for the benefit of You or any of them, or
> through or on behalf of or in conjunction with any other person,
> partnership or corporation, own, engage in, be employed by,
> advise, assist, invest in, franchise, make loans to, or have any
> interest in any quick oil change or similar business located at the
> premises of the Center or within ten (10) miles of the premises of
> any Victory Lane Quick Oil Change Center (except for other
> Victory Lane Quick Oil Change Centers which You operate under
> franchise agreements with Us). Your Owners agree that the
> provisions of this paragraph shall apply to them even if they
> transfer their interest in the corporation or partnership prior to the
> termination or expiration of this Agreement.

It is Victory Lane's position that it has a reasonable competitive interest in preventing

Defendants from using the confidential business information and goodwill they obtained as

Victory Lane franchisees to gain a competitive advantage in the quick oil change business.

According to Victory Lane, the non-compete requirement quoted above safeguards against a

former Victory Lane franchisee unfairly benefitting from the confidential information and

goodwill obtained as a Victory Lane franchisee and hoarding this competitive advantage over

other new and current Victory Lane franchisees.  Victory Lane argues further that the

non-competition provision is reasonable since it does not preclude Defendants from operating

any automobile repair businesses, just not a quick oil change business.

The Michigan Antitrust Reform Act generally prohibits any "contract, combination, or conspiracy between 2 or more persons in restraint of, or to monopolize, trade or commerce." Mich. Comp. Laws § 445.772 (2002).  However, the statute explicitly authorizes agreements not to compete as long as they are reasonable.  *See* MCLA §445.774a(1). Michigan courts have upheld non-competition provisions ranging from six months to five years.  *See*, *Coates,* 276 Mich. App. 498 (2007) (upholding a non-compete provision prohibiting former general manager's employment with any of employer's competitors located within one hundred miles of any of employer's locations for a period of one year); *Rooyakker & Sitz, PLLC,* 276 Mich. App. 146, 159 (2007)(upholding a non-compete provision prohibiting accountant from rendering any of the services provided by his former firm to any of that firm's clients for a period of two years); *In re Spradlin,* 284 B.R. 830, 836 (E.D. Mich. 2002)(upholding a non-compete clause prohibiting seller of furniture business from engaging in any office furniture business within a two-state area for a period of five years).

In the instant case, Victory Lane has presented sufficient evidence to establish that the Franchise Agreement's non-competition clause is reasonable.  Victory Lane has a reasonable competitive interest in preventing Defendants from using the confidential information they learned as Victory Lane's franchisee to gain a competitive advantage in the provision of oil change services.  Courts have also specifically found that covenants not to compete are enforceable in the context of quick oil change franchises.  *See, e.g.*, *Jiffy Lube v. International Inc. v. Weiss Bros. Inc.*, 834 F. Supp. 683, 692 (D. N.J. 1993).

Furthermore, the non-compete provision of the Franchise Agreement is reasonable in its duration and geographic scope.  The duration is limited to three years, a period which courts have

upheld as reasonable, *see, e.g., Spradlin*, and which the undersigned does not consider

unreasonable in light of Victory Lane's goal of preventing unfair competition for customers.  The

geographic limitation – *i.e.*, that Defendants may not operate a quick oil change center within 10

miles of any other Victory Lane franchise – is likewise tailored to serve the legitimate goal of

preventing unfair competition with Victory Lane's other franchisees.  The guiding principle is

that geographic limitations "must be tailored so that the scope of the agreement is no greater than

reasonably necessary to protect the employer's legitimate business interests."  *Superior*

*Consulting Co., Inc. v. Walling*, 851 F. Supp. 839, 847 (E.D. Mich. 1994).  The Franchise

Agreement's narrowly defined geographic scope does not seem patently unreasonable.  *See*

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp*., 511 F.3d 535 (6th Cir.

2007).  Thus, it is recommended that the Court find the Franchise Agreement's non-competition

clause to be valid and enforceable.

Turning to Defendants' conduct, it is uncontested that Defendants Starbird and Checkered

Flag continued (and still continue) to operate a quick oil change business at the Howell location

after the expiration of the Franchise Agreement.  Starbird admits that he continued to operate a

quick oil change business under the name "Checkered Flag" after the termination of the subject

Franchise Agreement.  *See* May 29, 2008 Deposition of Starbird at 82(Dkt. # 114, Ex. H).

Specifically, Starbird testified:

> Q: Now Checkered Flag continued, it had this name change, but it
> continued at the same location as Victory Lane of Howell, 3150
> East Grand River, correct?
>
> A: Correct.
>
> Q: And it had the same operations, right?

-11-

A: It was an oil change business.

Q: So was Victory Lane of Howell, correct?

A: Correct.

*Id.*

The Franchise Agreement clearly and unambiguously provides that Starbird and Checkered Flag may not, *inter alia*, "own, engage in, be employed by, advise, assist, invest in, franchise, make loans to, or have any interest in any quick oil change business or similar business located at the premises of the Center" within three years of the expiration of the subject Franchise Agreement (Dkt. # 114, Ex. C § 20.2). Starbird and Checkered Flag's admitted actions of owning and/or operating a quick oil change business at the Howell Location within three years of the expiration of the subject Franchise Agreement is clearly in violation of the above non-competition provision contained in the subject Franchise Agreement. *Id.* Accordingly, since Starbird and Checkered Flag breached the non-competition provision of the Franchise Agreement, Victory Lane is entitled to summary judgment on this claim.

### 3. Personal Guaranty of Franchise Agreement

Finally, Victory Lane asks for a ruling that the personal guaranty of the Franchise Agreement is enforceable against Starbird and Hoss, the individual defendants. The personal guaranty of the Franchise Agreements reads as follows:

> The undersigned individuals represent and warrant that they are all of the shareholders of the Franchisee, if the Franchisee is a corporation; or that they are all of the partners if the Franchisee is a partnership; and that they are all of the persons who may otherwise have a direct or indirect beneficial interest in the success of the Franchisee. Accordingly, to induce Franchisor to enter this Agreement and grant the franchise and rights mentioned herein to Franchisee, each of the undersigned individuals hereby jointly and

-12-

severally guarantees the full performance by Franchisee of
Franchisee's obligations under this Agreement and each of the
undersigned individuals hereby jointly and severally agrees to be
bound by all of the terms of this Agreement.  Each of the
undersigned also independently confirms the acknowledgments
contained in paragraph 21 this Agreement.

As discussed above, Defendant Checkered Flag breached the non-competition provision
contained in the subject Franchise Agreement.  Because Defendants Hoss and Starbird personally
guaranteed Checkered Flag's performance under the subject Franchise Agreement, Starbird and
Hoss are jointly and severally liable for any breach of the subject Franchise Agreement
committed by Checkered Flag.  Summary judgment against Defendants Hoss and Starbird, and in
favor of Victory Lane, is thus appropriate for their breach of the personal guaranty.  In other
words, any ultimate judgment entered against Defendant Checkered Flag for breach of the
Franchise Agreement should also be jointly and severally entered against Defendants Hoss and
Starbird.

### 4.  The Doctrine Of Prior Material Breach Does Not Apply

Defendants' response brief to Victory Lane's motion for summary judgment argues that
Defendants' breaches of the Franchise Agreement are excused under the doctrine of prior
material breach.  Specifically, Defendants contend that Victory Lane breached the following
provision of the Franchise Agreement:



**2.1 Grant**. Subject to the terms of this Agreement, Victory Lane
grants to You the exclusive right to own and operate a Victory
Lane Quick Oil Change Center under the Victory Lane. System and
a license to use the Marks in operation of the Center at the
following location: _____**HOWELL** (hand-written)_____.
If, however, at the time this Agreement is signed You have not
secured an approved location for the Center, You shall have the

right to select and locate the Center upon an approved site in the
general area of:_____ (left blank)_____.

Defendants claim that this provision gave them the exclusive right to operate a Victory Lane

franchise in all of Howell, Michigan.  In January 2007, prior to the expiration of the Franchise

Agreement, Victory Lane opened another oil change franchise in Howell, Michigan

approximately three miles away from Defendants' business.  Accordingly, Defendants claim that

Victory Lane materially breached the Franchise Agreement by allowing this competing franchise

to open, in direct contravention of Defendants' "exclusive" right to operate in Howell.

Plaintiff responds that § 2.1 of the Franchise Agreement did not grant Defendants the

exclusive right to operate in all of Howell, rather it merely granted Defendants the exclusive right

to operate in the specific location of their store – 3150 E. Grand River, Howell, Michigan.

Defendants previously moved for a summary judgment (Dkt. # 50) ruling that Victory Lane

breached § 2.1 of the Franchise Agreement.  Magistrate Judge Pepe recommended that

Defendants' motion for summary judgment be denied, since § 2.1 was ambiguous and open to

multiple interpretations, and since both parties proffered reasonable interpretations of § 2.1.

Thus, Magistrate Judge Pepe recommended that Defendants' motion for summary judgment be

denied, as the proper interpretation of § 2.1 presented a factual issue, for a jury to decide.

In any event, for purposes of the present motion, the proper interpretation of § 2.1 is

irrelevant because the doctrine of prior material breach would not apply to this case, even

assuming, *arguendo*, that Victory Lane did in fact breach § 2.1 of the Franchise Agreement by

allowing a competing franchise to open three miles away from Defendants' business.  Under

Michigan law, the doctrine of prior material breach of contract only applies where the alleged

-14-

prior breach of contract changes an essential operative element of the contract rendering performance by the other party **impossible**.  *See McCarty v. Mercury Metalcraft Co.*, 372 Mich. 567, 574 (1964).  There is no evidence of a material breach by Victory Lane that rises to the level of rendering Defendants' performance under the Franchise Agreement impossible.  Rather, it is undisputed that Defendants Starbird and Checkered Flag continued to operate their Victory Lane franchise after January 2007 (when the competing Victory Lane franchise opened).  Indeed, Defendants operated until the end of their franchise term (May 2007) and then for another month and a half beyond that date.  Moreover, Defendants Starbird and Checkered Flag then continued – and continue to this day – to operate a quick oil change center at the Howell location.  Since it cannot be established that Victory Lane's opening a competing franchise approximately three mile away from Defendants' franchise rendered Defendants performance "impossible," the doctrine of prior material breach does not apply and does not excuse Defendants' breaches of the Franchise Agreement.

### III.  <u>VICTORY LANE'S MOTION TO STRIKE COUNTERCLAIMS</u>

Defendants' counterclaims have a tortured procedural history; a discussion of the life, death and (attempted) reincarnation of Defendants' ill-fated counterclaims is best tackled in chronological order.

#### A.  *Factual Background & Procedural History*

Defendants' initially filed their counterclaims on January 24, 2008, as part of Defendants' Amended Answer (Dkt. # 14) to Victory Lane's First Amended Complaint (Dkt. # 5).  Defendants' initial counterclaims alleged: (1) that the noncompete provision at § 20.2 of the Franchise Agreement was an illegal restraint on trade; (2) that Victory Lane tortiously interfered

-15-

with Defendants' business relationships; and (3) that Victory Lane breached an implied covenant of good faith and fair dealing.

On August 10, 2008, Victory Lane filed a motion for summary judgment (Dkt. # 34) on Defendants' counterclaims.  On January 20, 2009, Magistrate Judge Pepe heard oral argument on Victory Lane's motion for summary judgment on Defendants' counterclaims.  On March 16, 2009,[1] Defendants' filed a motion for leave to file an amended counterclaim (Dkt. # 67).  On March 20, 2009, Magistrate Judge Pepe issued a Report recommending that Victory Lane's motion for summary judgment on Defendants' counterclaims be granted and that Defendants' counterclaims be dismissed in their entirety.  On March, 30, 2009, Defendants filed objections (Dkt. # 74) to Magistrate Judge Pepe's Report and Recommendation.

On April 14, 2009, Magistrate Judge Pepe entered an Order (Dkt. # 84) denying Defendants' motion for leave to file an amended counterclaim.  On April 28, 2009, Defendants' filed objections (Dkt. # 93) to Magistrate Judge Pepe's Order – these objections appear to still be pending before the Court.

On August 10, 2009, the Court entered an Order (Dkt. # 105) accepting Magistrate Judge Pepe's recommendation that Victory Lane's motion for summary judgment be granted and that Defendants' counterclaims be dismissed in their entirety.  On that same day, the Court entered an Order (Dkt. # 106) permitting Victory Lane to file a Second Amended Complaint.  In accordance with this Order, Victory Lane filed a Second Amended Complaint (Dkt. # 108) on August 19,

---

[1]This date fell after the hearing on Victory Lane's motion for summary judgment on Defendants' counterclaims but before Magistrate Judge Pepe issued his Report and Recommendation recommending that Victory Lane's motion be granted and that Defendants' counterclaims be dismissed.

2009.  On September 2, 2009, Defendants' filed their Answer (Dkt. # 109) to Victory Lane's

Second Amended Complaint and, in this Answer, Defendants attempted to revive their ill-fated

counterclaims.  In particular, Defendants' alleged as follows:

### DEFENDANTS' COUNTER-CLAIMS

> Defendants hereby incorporate their Counter-Complaint and
> Proposed Amended Counter-Complaint as set forth in their entirety
> (Dkt. # 14 and Dkt. # 67 respectively) for the purpose of preserving
> said Counter-Claims to the extent permitted by this Court upon this
> Court's resolution of Defendants' pending Motion for Leave to
> File its First Amended Counter-Complaint (Dkt. # 67) or as
> otherwise permitted by this Court and the Federal Rules of Civil
> Procedure.

[Defendants' Answer to Second Amended Complaint (Dkt. # 109)]

Victory Lane has now filed a motion to "strike" (Dkt. # 111) this latest reincarnation of

Defendants' counterclaims.  Prior to the hearing on Victory Lane's motion to strike, the parties

indicated in a report (Dkt. # 121) to the undersigned that they had reached an agreement that

Count I (Declaratory Judgment) and Count II (Tortious Interference With Business

Relationships) of Defendants' counterclaims should be struck.

As to Defendants' remaining counterclaim (Count III – Breach of Contract), the parties

were not able to reach an agreement regarding whether this claim should be struck.  In the

opinion of the undersigned, Magistrate Judge Pepe's reasoning concerning the dismissal

Defendants' counterclaims is sound.  Magistrate Judge Pepe recommended that the Court

summarily dismiss Defendants' first set of counterclaims – the Court agreed, and adopted

Magistrate Judge Pepe's recommendation as to the dismissal Defendants' first set of

counterclaims.  Magistrate Judge Pepe next ordered that Defendants not be permitted to assert

-17-

amended counterclaims; Defendants objected to this order and these objections are still pending before the Court.  It is recommended that the Court overrule Defendants' objections (Dkt. # 93) and **GRANT** Victory Lane's motion to strike Defendants' counterclaims, and completely dismiss Defendants' counterclaims, with prejudice.

### IV.  <u>CONCLUSION</u>

For the reasons set forth above, it is **RECOMMENDED** that Victory Lane's motion for summary judgment be **GRANTED** and that Victory Lane's motion to strike be **GRANTED.**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court.  The response shall address

each issue contained within the objections specifically and in the same order raised.


                                    S/Mark A. Randon                                        
                                    MARK A. RANDON
                                    UNITED STATES MAGISTRATE JUDGE

Dated:  November 13, 2009

                                    Certificate of Service

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this
date, November 13, 2009, by electronic and/or ordinary mail.


                                    s/Melody R. Miles                                        
                                    Case Manager to Magistrate Judge Mark A. Randon

-19-